UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CIV-80043-SINGHAL

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TODD STEPHENS, *et al.*,

        Defendants.
_____/

## ORDER

**AS A RESULT** of his criminal case, Todd Stephens ("Defendant" or "Stephens") owes the United States of America over $100,000,000. This cause has come before the Court on Stephens' *Pro Se* Motion for Equitable Relief to Return 50% of Net Sale Proceeds (the "Motion") (DE [138]), filed on July 7, 2025. On March 23, 2017, Mr. Stephens was sentenced to prison followed by supervised release for one count of conspiracy to launder money instruments in violation of 18 U.S.C. § 1956(h). *See United States v. Carroll, et al.*, Case No. 16-cr-60227-KMW, (DE [505]). And on May 30, 2023, the United States filed its Amended Complaint to foreclose on the criminal restitution judgment lien entered against Mr. Stephens. (DE [28]). With this Motion, Mr. Stephens embarks upon another attempt to stall and obstruct the United States' enforcement of its criminal restitution judgment lien and, in effect, undermine the $130 million criminal restitution judgment itself. The Court will not enable this, and so the Motion will be denied.

### RELEVANT PROCEDURAL HISTORY

This matter centers on the property at 230 Miramar Way, West Palm Beach, FL 33405 (the "Property"). The United States filed its Complaint to foreclose its criminal

restitution judgment lien on the Property on January 12, 2023.  *See* (DE [1]).  The United States submitted an Amended Complaint on May 30, 2023.  *See* (DE [28]).  On October 13, 2023, the Court entered a final judgment allowing the United States to foreclose the restitution lien on the property.  (DE [55] at p. 5).  As the Court designated, the Property would be sold through a receiver.  *Id.*  The Court twice named George Richards as the receiver to marshal and sell the Property.  *See* (DE [73], [87]).

On May 5, 2025, the United States docketed an Expedited Motion for an Order to Show Cause, describing Mr. Stephens' "interference" to hinder attempts to foreclose on the Property pursuant to the Court's Orders.  (DE [104] at p. 5).  After a flurry of filings, the Parties attended a Show Cause hearing on May 30, 2025.  *See* (DE [132]).  The hearing centered on whether Mr. Stephens should be held in contempt for violating the Court's Orders (DE [73], [87]).  Mr. Stephens addressed the United States' allegations that he was trying to "prevent Mr. Richards from selling the property either directly or indirectly with the assistance of others. . ."  (DE [104] at ¶ 10).  For instance, regarding the assertion that the Property was "listed for sale by a realtor[,]" Mr. Stephens vowed to have that listing taken down.  *Id.* at ¶ 9.  Mr. Stephens also expressed that he would cooperate with the sale, but he requested that proceeds from the Property's sale be deposited in a court-supervised escrow account pending the U.S. Supreme Court's disposition of his petition for a writ of certiorari.  Based on the consensus reached at that hearing, the Court authorized the Property's sale but still accommodated Mr. Stephens' request.  *See* (DE [135], [136]).  Mr. Stephens did *not* ask for a portion of the sale's proceeds at the hearing.

The sale of the Property closed on July 16, 2025. (DE [141] at ¶ 1). Shortly before, Mr. Stephens' petition for a writ of certiorari was denied on June 23, 2025. *See* (DE [137]). All of this background is essential for an understanding of the instant Motion, as it embodies another attempt to unravel or undermine the Court's previous rulings. It cuts against the spirit expressed by Mr. Stephens at the Parties' contempt hearing, and Mr. Stephens did not raise these concerns at the time. Mr. Stephens filed his Motion on July 7, 2025. (DE [138]). The United States and Defendant CadleRock both filed respective responses in opposition to Mr. Stephens' Motion. *See* (DE [139], [141]). Mr. Stephens then got in the last word, filing his Reply in support of his Motion (DE [140]) on July 16, 2025. The Court has reviewed each of these filings and the record. In essence, Mr. Stephens' pleadings amount to yet another attempt to get the Court to reconsider its previous rulings, including on a case in which the undersigned was not the sentencing judge.

## STANDARD

"'Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice.'" *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1342 (S.D. Fla. 2007) (quoting *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993)). A motion for reconsideration cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005). Furthermore, "[i]t is an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through – rightly or wrongly.'" *Z.K.*

*Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). "A motion for reconsideration is 'committed to the sound discretion of the district judge.'" *Garcon v. United Mut. of Omaha Ins. Co.*, 779 Fed. Appx. 595, 600 (11th Cir. 2019) (citations omitted).

## DISCUSSION

The Court starts where there is no material dispute: the United States has a $130,220,803.56 restitution judgment against Mr. Stephens, as well as a perfected restitution lien on all net proceeds from the Property's sale. (DE [139] at ¶ 1; DE [141] at p. 2). And to date, the government has recovered $28,106,595.48. (DE [138] at p. 1).

In the Motion, Mr. Stephens takes aim at the restitution judgment from the criminal case, which he describes as "grossly disproportionate[,]" "unconstitutional[,]" and excessive. *Id.* He laments not receiving "meaningful relief to date," despite his guilty plea, compliance with the supervised release terms, and cooperation with the United States. *Id.* at p. 1-2. Mr. Stephens does not challenge the sale of the Property in the instant Motion, but he suggests that the net sale proceeds should correspond with the current restitution payment schedule. *Id.* at p. 3. That is, Mr. Stephens seeks fifty percent of the net proceeds from the Property's sale, pointing to the Court's supposed powers under the All Writs Act, 28 U.S.C. § 1651(a) and Federal Rule of Civil Procedure 60(b)(6). Mr. Stephens argues that Rule 60(b)(6) "provides relief for extraordinary reasons," while the All Writs Act "empowers this Court to preserve justice. . ." *Id.* at p. 4. As set forth below, neither argument applies here. Further, the Court takes umbrage with some authority that Mr. Stephens includes.

**Mr. Stephens Cannot Rely on Rule 60(b)(6) or the All Writs Act**

Throughout his Motion, Mr. Stephens tangles and conflates the final judgment in this matter with the restitution judgment from the criminal case. Mr. Stephens makes no secret his real grievance lies with the $130,220,803.65 restitution judgment, which he labels as "grossly disproportionate and speculative[.]" *Id.* at p. 3. But Rule 60(b) cannot be used for "relief from judgment in a criminal case. . ." *U.S. v. Mosavi*, 138 F.3d 1365, 1366 (11th Cir. 1998) (citation omitted); *U.S. v. Ramsey*, 1997 WL 14152, at *1 (7th Cir. 1997) (observing that Rule 60(b) allows a party to "move for relief only from a judgment or order in a civil case. . ."). To the extent this Court can isolate Mr. Stephens' request to the relevant civil judgment, there is not a sufficient "reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Court previously allocated $100,000 of the net proceeds to Mr. Stephens, and there is no need to revisit this issue. (DE [73] at ¶ 7(d)).

Mr. Stephens also leans on the All Writs Act as a mechanism for "equitable remedies to address [his] post-judgment hardships," again challenging that the "$13 million tied to [his] nine-month role at NuMedCare. . ." has been satisfied. (DE [140] at p. 2-3). Once again, he casts doubts on the appropriateness of the $130,220,803.65 restitution judgment. *Id.* at p. 3. But Mr. Stephens' argument is unavailing. The All Writs Act is a "residual source of authority to issue writs that are not otherwise covered by statute." *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1264 (11th Cir. 2021) (citing *Penn. Bureau of Corr. V. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985)) (quotations omitted). If another statute "specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id.* 18 U.S.C. § 3664(a) makes mention of the court's "discretion in fashioning a restitution order." 18 U.S.C. § 3664(a).

Mr. Stephens certainly recognizes this, as 18 U.S.C. § 3664 features in his own Motion. (DE [138] at p. 3). Mr. Stephens cannot overcome this roadblock to his Motion. And separate from this obstacle, the Court is simply not persuaded by Mr. Stephens' appeal to equity. As previously noted, Mr. Stephens did not broach this request in the Parties' May 30, 2025 hearing, in which he emphasized cooperation. The Court has already set aside $100,000 for Mr. Stephens, and it will not empower this attempt to relitigate the Court's previous judgments yet again. There is simply no reason for the Court to rethink that which it has already thought through, and no legal reason to rework Judge Williams' sentence in Mr. Stephens' criminal case.

### Mr. Stephen's Inclusion of Non-Existent Citations is Sanctionable

The Court regrets that it must weigh in on an issue flagged by Parties: the use of automated, artificial intelligence tools in research and drafting filings. Both CadleRock and the United States identify cases Mr. Stephens cites that "do not exist." (DE [139] at p. 4). CadleRock proposes that Mr. Stephens "improperly relied, unchecked, on artificial intelligence. . ." *Id.* The Court scrutinized the disputed citations and can confirm the designated cases do not exist as cited.

In his own right, Mr. Stephens does not dispute that he used "automated research tools without sufficient verification. . ." (DE [140] at p. 3). His acknowledgement gets to the core of a real, evolving challenge for the legal profession. The Court is, no doubt, impressed by the remarkable advancements in artificial intelligence and the prospect that cumbersome tasks may be streamlined and completed in mere seconds. But, as noted by the Hon. Xavier Rodriguez, "errors or 'hallucinations' may occur in the output of the LLMs powering these platforms." Xavier Rodriguez, *Artificial Intelligence (AI) and the*

6

*Practice of Law*, 24 SEDONA CONF. J. 783, 784 (2023).

Perhaps unsurprisingly then, "[t]he use of non-existent case citations and fake legal authority generated by artificial intelligence programs has been the topic of many [recent] published legal opinions." *O'Brien v. Flick*, 2025 WL 242924, at *6 (S.D. Fla. 2025); *Twanetta R. Rollins v. Premier Motorcar Gallery, Inc. d/b/a Premier Motorcars, et al.*, 2025 WL 2166019, at *4 (N.D. Fla. 2025) (". . . with the advent of AI, courts have seen a rash of cases in which both counsel and pro se litigants have cited such fake, hallucinated cases in their briefs."). As made clear in recent rulings, the courts have "inherent authority to sanction the misuse of AI when it affects the Court's docket, case disposition, and ruling." *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enterprises, LLC*, 2025 WL 1440351, at *3 (S.D. Fla. 2025).

As a preliminary consideration, the Court recognizes that Plaintiff is proceeding *pro se*. Certainly, documents filed *pro se* must be "liberally construed[]" and evaluated with "less stringent standards than formal pleadings drafted by lawyers[.]" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citations omitted). But a liberal standard is not the same as no standards—*pro se* litigants are nonetheless required to "conform to procedural rules." *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) (citations omitted). Courts cannot function as "*de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (citation omitted). And Mr. Stephens' *pro se* status does not shield him from the "same duty of candor to the court as imposed on any other litigant." *Kendrick v. Sec'y, Florida Dep't of Corr.*, 2022 WL 2388425, at *3 (11th Cir. 2022); *see also O'Brien v. Flick*, 2025 WL 242924, at *7 (S.D. Fla. 2025) (in which a

*pro se* plaintiff was sanctioned for citing nonexistent authority).  Citing imprecise, non-existent legal authority breaches this duty of candor.

As the Court contemplates appropriate consequences, two recent cases speak to the present circumstances.  In *O'Brien v. Flick*, the *pro se* plaintiff cited two non-existent cases; when confronted, he downplayed the issue, claiming "'some case law references' 'may have been cited in error,' but that this was an 'honest mistake' and part of mere 'minor clerical errors[.]'"  *O'Brien*, 2025 WL 242924, at *5.  The Court honed in on the plaintiff's attribution of these errors to "'an inadvertent mix-up while handling multiple case references[,]'" finding this unpersuasive.  *Id.*  The Court sanctioned the plaintiff—by dismissing the case—because, he had "decline[d] to admit that he used non-existent case citations, whether . . . generated through his use of generative AI or otherwise. . ."  *Id.*  To the Court, this indicated that the plaintiff had made his filing "in bad faith."  *Id.*

The plaintiff in *Crespo v. Tesla, Inc.* similarly cited non-existent citations and quotes, which he ascribed to a "'flawed workflow process[.]'"  *Crespo v. Tesla, Inc.*, 2025 WL 1799411, at *2 (S.D. Fla. 2025).  As a suitable sanction, the Court required the plaintiff to apologize in writing to the defendant's counsel and pay the defendant for its reasonable attorneys' fees sustained in "researching the fake citations and filing the Motion to Strike."  *Id.*  Notably, the Court clarified that the sanctions would have been "much more serious" had the plaintiff demonstrated "a lack of candor regarding the fake citations"—distinguishing the situation from that in *O'Brien*.  *Id.*  As the Court credited, the plaintiff took responsibility and "admit[ted] to using artificial intelligence ("AI") . . . [and] also apologize[d] to the Court for wasting its time. . ."  *Id.*

Here, Mr. Stephens' conduct most closely resembles the *Crespo* plaintiff.  He

"acknowledges inadvertent errors" with certain case citations and admits to using "automated research tools without sufficient verification. . ." (DE [140] at p. 3). Also, Mr. Stephens "apologizes to the Court." *Id.* Though the Court appreciates Mr. Stephens taking accountability, he has by now, expended both judicial resources and time. And it must be reiterated that Mr. Stephens' disregard for the Court's time is not restricted to a handful of hallucinated citations—this Motion itself does not comport with Mr. Stephens' previous posture and assurances of cooperation. Mr. Stephens' continued efforts to unravel the Court's criminal restitution judgment are counterproductive and, based on relevant factors, the Court has no choice but to pursue sanctions. The latest mistake may not value over $130 million, but it is a fraud on the Court all the same.

Our legal system is the envy of the world. The undersigned would know—more than six decades ago, his parents immigrated from India, drawn by the promise of opportunity for those willing to work hard and adhere to the rules. But the American system cannot just rest on the laurels of its institutions or cherished principles—it relies on each of its participants to behave professionally and with integrity. Our beloved institutions demand—and deserve—nothing less. Otherwise, they too may wither and become corrupted like those in far away lands.

This is what Mr. Stephens overlooks in downplaying his non-existent citations as mere "inadvertent errors[.]" (DE [140] at p.3). Looking past his breach of ethics would only serve to erode this institution and undermine public trust in the rule of law. In short, integrity cannot be about convenience—it must reflect a commitment to honor the law and the ideals it seeks to uphold.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendant's *Pro Se* Motion for Equitable Relief to Return 50% of Net Sale Proceeds (DE [138]) is **DENIED.**

2. The Court will impose sanctions as follows:

    a. Defendant must apologize in writing to opposing counsel for the submission of fake, hallucinated cases;

    b. Defendant shall pay CadleRock and the United States respective reasonable attorneys' fees incurred in researching the fake citations and filing their responsive filings. By **August 20, 2025**, CadleRock and the United States shall each file a memorandum stating the amount of reasonable attorneys' fees sought, including the hourly rate, time incurred, description of services, and the experience of counsel. Defendant shall be permitted to file a responsive memorandum on or before **August 28, 2025** with any objections to the time, hourly rate, and amount of fees sought. The Court shall then determine the amount of reasonable attorneys' fees to be awarded and payable by Defendant.

    c. Going forward, Defendant must attach to any paper filed with the Court a signed declaration that:

        i. Discloses any use of artificial intelligence tools.

        ii. Identifies any portions of the filing prepared by artificial intelligence.

        iii. Certifies to the Court that he has checked the accuracy of any portion generated by artificial intelligence, including citations and authorities.

        iv. Any paper submitted to the Court without such a declaration will be

stricken, and further infractions may result in additional sanctions.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida this 6th day of August 2025.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF

cc: George Richards
1325 South Congress Ave, Suite 202
Boynton Beach, FL 33426

Todd Stephens
230 Miramar Way
West Palm Beach, FL 33405
*PRO SE*